

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

# LETTER OPINION

May 6, 2010

Alexander W. Booth
Brownstein, Booth & Associates
512 42nd Street
Union City, New Jersey 07084
    (*Attorney for Petitioner*)

Andrew D. Kogan
Office of the U.S. Attorney
970 Broad Street
Room 702
Newark, New Jersey 07102
    (*Attorney for Respondent*)

    RE:    **Felix v. United States**
             **Civ. No. 08-5055 (WJM)**

Dear Counsel:

    Julio Felix brings the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner Felix attacks his sentence, arguing that he was denied his Sixth Amendment right to effective assistance of counsel at trial. After consideration of Felix's motion, as well as the files and records of his case, this Court concludes that Felix is not entitled to relief. As such, no hearing is required. 28 U.S.C. § 2255(b). Thus, the Government's motion to dismiss is **GRANTED**, and Felix's petition is **DISMISSED WITH PREJUDICE**.

**I.    BACKGROUND**

On July 20, 2004, a federal grand jury returned a superseding indictment against Julio Felix, charging him with: (1) conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; (2) possession with intent to distribute cocaine, under 21 U.S.C. §§ 841(a), (b)(1)(B)(ii); and, (3) two counts of using a telephone to facilitate the commission of a conspiracy to distribute cocaine, in violation of 21 U.S.C. § 843(b). Petitioner Felix entered a plea of not guilty.

In anticipation of trial, Felix filed several pretrial motions, which included a motion to suppress items recovered during a search of his apartment. The items seized were a pager, a cell phone, a bill, some paper and a scale.[1] The crux of Felix's suppression argument, as presented by his counsel in this motion and during oral argument, was that his oral consent to the search was not given voluntarily. (9/15/04 Tr. 18: 18-21) ("And our position is that Mr. Felix ... reasonably believed that he had no choice but to agree because of the action and statement the agents."). Felix submitted no affidavits or documentation in the record to substantiate this position. Thus, after oral argument, the Court reserved on the motion to allow Felix to submit a declaration or other affirmation setting forth the threshold showing required for a suppression hearing. (9/15/04 Tr. 22: 8-18).

Following oral argument on his pretrial motions, Petitioner Felix wrote to the Court requesting new counsel. On September 24, 2004, Felix received a new attorney and a trial date of November 16, 2004. When the date of trial arrived, the Court granted Petitioner's request for an additional day to prepare his case.

On the morning of Petitioner's rescheduled trial, November 17, 2004, the Court again heard Petitioner Felix's suppression motion. Through counsel, Felix presented a different theory for suppression, specifically that he never gave the agents consent to search his apartment. Petitioner Felix submitted no declaration or affidavit to substantiate this theory. Accordingly, the Court denied Petitioner's suppression motion but stated that defense counsel could cross-examine the agent who searched Felix's apartment on the consent issue.

In addition, before trial began, the Court addressed a separate issue raised by the Government concerning one of its witnesses. The Government informed the Court of a

---

[1] Petitioner Felix's counsel conceded during oral argument that these items targeted for suppression were "minimal evidence [against Felix] compared to cooperating [witnesses], but nonetheless it could be used for a cumulative effect by the Government." (9/15/04 Tr. 16-18).

2

November 5, 2004 letter sent to defense counsel concerning one of the Government's cooperating witnesses, Hugo Agudelo. As disclosed in this letter, Agudelo experienced an amnesiac episode in 1994, which lasted for three months following a car accident. The Government represented to the Court that it had inquired further of Mr. Agudelo and was unaware of any recurrence of amnesia in the intervening ten years. Following this disclosure, the Court ruled that defense counsel could raise Agudelo's past amnesia during cross-examination. (11/17/04 Tr. 76: 2-8).

At the heart of the Government's case-in-chief during trial were a series of tape-recorded conversations between Hugo Agudelo and a Hispanic male alleged to be Petitioner Felix. Hugo Agudelo, an admitted cocaine and heroin dealer, testified that he was involved with the conspiracy charged in the Superseding Indictment. Specifically, Agudelo's testimony was used by the Government to explain the methods of the conspiracy and the significance of the conversations discussed on the tapes. For example, Agudelo identified Felix's voice in those recorded conversations in which Felix did not identify himself, *see, e.g.*, 11/18/04 Tr. 16:25-17:3, and explained the meaning of certain coded statements.[2] Agudelo also testified that Peititoner Felix's apartment was used as a drug stash house. (11/18/04 Tr. 31:1-32:8).

Agudelo was not the Government's only witness. In addition to Agudelo, the Government presented the testimony of Special Agent James Alleva, who testified that Drug Enforcement Administration ("DEA") agents:

> identified a phone number over our wiretap ... [and] did a check on that phone number. It came back to 201-583-9446, Julio Felix ... We then went to that location, we saw his name, physically saw his name on the door buzzer system. We had numerous phone conversations between Mr. Agudelo and Julio Felix on our wiretap to that phone number. We had surveillance on the 12th and the 14th, which saw Mr. Agudelo at that location. We had the conversations on the 12th and the 13th regarding the three kilograms of cocaine left.

---

[2] Here is one representative exchange between the Government and Agudelo on direct examination:
   Q. And when the defendant [Felix] states that he has to bring back everything, what is he talking about?
   A. To return the drugs I had given him.
   Q. And when the defendant [Felix] says, "So the guy tried to cook three and the stuff was all bad and they had problems," what's he talking about?
   A. He was referring to changing it from cocaine to crack. (11/18/04 Tr. 13:17-21.)

(11/18/04 Tr. 92:4-13). Beyond Agent Alleva's testimony, the Government also introduced the testimony of two additional DEA agents, three kilograms of cocaine, wiretap conversations involving Petitioner Felix, telephone records, photographs and items found during a search of Felix's apartment. Petitioner Felix did not present any evidence on his own behalf.

Following a three-day trial, a jury convicted Felix on all four counts. This Court then sentenced Felix to term of imprisonment of 120 months. After his sentencing, Felix appealed his conviction to the Third Circuit. After his Third Circuit appeal was denied, Felix filed the instant Section 2255 motion. Felix first filed this motion *pro se*. After this Court appointed habeas counsel, a supplemental brief was filed by Felix's new attorney. The Government responded by way of a motion to dismiss, which is now before the Court.

**III. DISCUSSION**

Petitioner Felix brings the instant Section 2255 motion on Sixth Amendment grounds. In his papers, Felix alleges that his attorneys were ineffective for the following reasons: (1) failing to cross-examine cooperating witness Hugo Agudelo properly; (2) failing to follow up on the motion to suppress; (3) failing to object to the Government's vouching for Argudelo; and (4) failing to file for Speedy Trial Act dismissal. Each of these arguments will be addressed in turn. Before addressing the merits of Petitioner's arguments, however, the Court will first discuss the standard by which an ineffective assistance of counsel claim is evaluated.

    A.    <u>Standard</u>

The standard for judging an ineffective assistance of counsel claim was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the *Strickland* test, Felix must demonstrate that (1) his counsel's performance was deficient and (2) that he was prejudiced by this deficient performance. *Strickland*, 466 U.S. at 687; *see also United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008). To succeed on the first prong, Felix must show that his attorney's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To prove prejudice, Felix must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is 'a probability sufficient to undermine confidence in the outcome.'" *Hankerson*, 496 F.3d at 310 (quoting *Strickland*, 466 U.S. at 694). Accordingly, the movant will not be entitled to relief "unless [he or she] affirmatively establishes the likelihood of an unreliable verdict." *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir.1993).

The Third Circuit has "endorsed the practical suggestion in *Strickland* to consider the prejudice prong before examining the performance of counsel prong because this course of action is less burdensome to defense counsel." *Lilly*, 536 F.3d at 196 (internal quotations omitted); *see Strickland*, 466 U.S. at 694 (stating that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so," the prejudice prong should be examined before the performance prong "to ensure that ineffectiveness claims do not become so burdensome to defense counsel that the entire criminal justice system suffers as a result"). Accordingly, this Court will turn first to the prejudice prong to determine whether Felix has demonstrated the requisite reasonable probability that but for the alleged errors of counsel, the result of the proceeding would have been different.

> B.  Failure to Cross-Examine Hugo Agudelo Effectively

As discussed above, Hugo Agudelo was a cooperating witness who testified that he used Felix's apartment as a stash house. The Government used Agudelo's testimony to explain the context and meaning of certain wiretapped conversations with Felix and to detail a drug transaction captured on surveillance tape by DEA agents. In his petition, Felix highlights a number of alleged deficiencies in the treatment of Agudelo by his trial counsel.

> 1.  *Failure to Investigate or Seek Medical Records*

First, Felix alleges that his lawyer's failure to investigate a past incidence of amnesia suffered by Agudelo was ineffective. As discussed above, this amnesiac episode in 1994 followed a car accident and lasted for three months. When discussed on the eve of trial, trial counsel told the Court that he was aware of Agudelo's past amnesia but never attempted to have him medically examined. The Government represented that Agudelo was asked about this amnesiac episode and stated that he had never suffered a recurrence. (11/17/04 Tr. 35:25-36:5.)

While Felix argues that trial counsel's failure to investigate was in error, Felix has failed to point to any specific information that would have been discovered through this investigation. As such, Felix invites the Court to speculate on what might have been discovered, which is not sufficient to demonstrate ineffectiveness. *See* Pet'r's Br. 6 ("Mr. Felix must be afforded another trial, in order to have the opportunity to cross-examine the governments [sic] witness Hugo Agudelo on his amnesia condition, since this cross-examination *might* reveal that Mr. Agudelo never fully recovered from his amnesia.") (emphasis added). Thus, the Court is left only with Petitioner's speculation to support his argument that investigation of Agudelo's medical records would have produced useful information to his defense. *See, e.g.*, *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir.1999)

(holding that "totally speculative" arguments as to prejudice did not show "a probability sufficient to undermine confidence in the outcome"). Given this speculation and the Government's representation to the Court on the record that Agudelo did not have recurring amnesia, the Court cannot find a reasonable probability that the outcome of Felix's trial would have been different had trial counsel sought Agudelo's medical records for the ten years following this single amnesiac episode.

This is particular true, in light of the fact that most, if not all, of Agudelo's testimony was corroborated by wiretap evidence. As discussed above, the Government relied heavily in its case in chief on recorded conversations between Agudelo and Petitioner Felix. For a good portion of his testimony, Agudelo explained the context and import of these conversations, after they were played in open court. After discussing the recorded conversations, Agudelo explained a drug transaction, most of which was captured on surveillance tape. There were no apparent holes in his memory during his testimony, and to the extent that Agudelo suffered any memory lapse, his testimony is corroborated by other sources. As such, the Court cannot find it reasonably probable that cross-examination of Agudelo regarding a short-term amnesiac episode – that occurred over two years before Felix met Agudelo and nine years before the criminal conduct in question – would have affected the outcome of this trial, given the fact that Agudelo's testimony was largely corroborated.

      2.     *Other Alleged Deficiencies in the Agudelo Cross-Examination*

In addition to the failure to cross-examine Hugo Agudelo on his past amnesia, Felix alleges other deficiencies in trial counsel's treatment of Agudelo. Specifically, Felix contends that trial counsel ignored "fertile areas for cross," including Agudelo's illegal immigration status, failure to pay taxes, and employment of his own son in his drug business. (Pet'r's Supplemental Br. 6.) While each of these cross-examination topics likely would have cast Agudelo personally in an unfavorable light, it is far from reasonably probable that such allegations would have caused the jury to change their opinion on the wiretap evidence, which were far more damning to Felix at trial. As noted above, Agudelo was used to explain conversations recorded on tape. Since the jury had the benefit of hearing these conversations for themselves, it seems clear that any damage done to Agudelo's character through cross-examination would not have undermined the weight of the tape evidence itself. *See United States v. Fisher,* 43 Fed. App'x 507, at *4 (3d Cir. 2002) (finding sufficient evidence in the record to tie defendant to an apartment and the crack cocaine found within so that "even if defense counsel had conducted a better cross examination [regarding a post-arrest jailhouse call to a friend] ... it is not probable the verdict would have been different."). Accordingly, the Court cannot find a reasonable probability that but for counsel's failure to cross-examine on these topics, the outcome of the trial would have been different.

### C. Failure to Submit Additional Support for Motion to Suppress

Felix next alleges error stemming from his attorneys' failure to file additional documentation in support of his motion to suppress. For the reasons that follow, the Court finds that Felix has not demonstrated prejudice.

As discussed above, Felix's first court-appointed lawyer filed several pretrial motions, including a motion to suppress items seized during a search of Felix's apartment. The theory advanced in the motion was that the consent given by Felix to the agents was involuntary because he "believed he had no choice but to agree because of the action and statements of the agents." (9/15/04 Tr. 18:20-21). At a pretrial hearing, the Court stated that Felix failed to make a threshold showing for an evidentiary hearing[3] but invited Felix to supplement his motion with an affidavit or declaration. Shortly after this September 15, 2004 hearing, Felix wrote to the Court requesting new counsel. On September 24, 2004, new counsel was appointed for trial. After this, no affidavit or declaration was submitted by Felix to support his involuntary consent argument; however, a few minutes before jury selection on November 17, 2004, Felix offered a new suppression theory – that he never gave consent. Again, this was not established in an affidavit or certification; this new theory was presented to the Court by counsel.

Felix states that trial counsel was ineffective in failing to "follow up" on the motion to suppress. Assuming, for the sake of argument, that trial counsel had submitted the affidavit and that the Court granted the motion to suppress, there was more than sufficient remaining evidence introduced by the Government at trial to support its case. This evidence has been discussed at length, but it bears highlighting again that the most damning evidence presented against Felix came from the wiretap recordings. Exclusion of the items found in Felix's apartment – i.e., a scale, pager, bill, some paper, and a cell

---

[3] The standard for when an evidentiary hearing on a suppression motion is required is "well settled in our case law." *United States v. Jackson*, 2010 WL 325791, at *1 (3d Cir. Jan. 29, 2010). As a general matter, an evidentiary hearing is required in circumstances in which a defendant advances a "colorable claim" that his or her constitutional rights have been violated. *United States v. Brink*, 39 F.3d 419 (3d Cir.1994) (holding that the District Court erred in failing to hold an evidentiary hearing where the defendant stated "a colorable claim that the government violated his constitutional right to counsel by placing him in a cell with a known informant who may have been acting as a government agent"). A claim is "colorable" if it consists "of more than mere bald-faced allegations of misconduct." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir.1996). Thus, to warrant an evidentiary hearing, a defendant's motion must contain "issues of fact material to the resolution of the defendant's constitutional claim." *Id.* Here, Felix's assertions through counsel and unsworn allegations in the briefing were "bald-faced allegations" that failed to present a "colorable claim."

phone – would not have affected the weight of the recorded evidence, in which Felix identified himself by name and discussed drug transactions. Accordingly, it does not appear that, but for counsel's failure to submit this affidavit, the result of this proceeding would have been different.

In addition, the record belies Felix's assertion that his counsel's conduct was deficient. Felix attributes trial counsels' failure to supplement the motion to a lack of familiarity with the case; however, this appears to be a misrepresentation of the record. In a passage cited by Felix, trial counsel stated:

> I suppose I have to mention something again that my client just mentioned to me. It's my understanding through former counsel and discovery that there was an oral consent to search the apartment but not actually a literally signed one, you know the normal form. I'm now kind of being advised that that didn't even happen. ... That the oral consent didn't even happen. To my knowledge, there was never a motion to suppress evidence seized from the apartment for that reason. (11/17/04 Tr. 45: 12-16, 18-20).

This passage correctly notes the position taken by Felix's first attorney in the pretrial motions and demonstrates familiarity with the case and the motions.

This Court gave Felix several adjournments, including one after Felix was given a new lawyer and another on the eve of trial. For whatever reason, Felix waited until moments before jury selection to raise this alternate theory for suppression through his lawyer. While Felix drafted and sent other communications to the Court, he never drafted the affidavit requested. On the basis of this record, trial counsel's representation does not appear deficient.

Further, even now, Felix has presented the Court with no affidavit placing his consent to the apartment search in issue. Instead, Felix's habeas counsel submits his own certification with the reply brief, stating that Felix told him that he did not consent. *See* Cert. of Alexander W. Booth, Esq. This certification presents the same problems as Felix's original pretrial motions – Felix makes unsubstantiated statements through his counsel.[4] This is not enough to warrant a suppression hearing, let alone a finding of

---

[4] While the Court acknowledges that Petitioner Felix is incarcerated in Colorado, a long distance from habeas counsel in New Jersey, Felix could have submitted his own affidavit with this motion. After all, Felix submitted his initial briefing on the instant motion to the Court *pro se*. As such, it appears that Felix had access to facilities that would have enabled him to draft and sign his own affidavit.

8

error.[5]

### D. Felix's Remaining Arguments

Felix's final two arguments have no merit. First, Felix argues that trial counsel was deficient in failing to object to the Government's "vouching" for Argudelo. This argument was rejected by the Circuit on Felix's direct appeal. *See United States v. Felix*, 314 Fed. App'x 430, at *2 (3d Cir. 2008). Since the Circuit examined the instant trial record and found that there was no vouching, trial counsel's failure to object on this ground cannot be deficient.

Finally, Felix contends that counsel erred in failing to move for Speedy Trial Act dismissal. Felix makes no specific argument and alleges no facts in support of this contention. After review of the docket, the Court finds no basis for this argument. The Speedy Trial Act of 1974 requires a criminal defendant's trial to commence within seventy days of his indictment or initial appearance, 18 U.S.C. § 3161(c)(1), and entitles him to dismissal of the charges if that deadline is not met, § 3162(a)(2). As relevant here, the Act automatically excludes from the seventy-day period "delay resulting from ... proceedings concerning the defendant," 18 U.S.C. § 3161(h)(1), and separately permits a district court to exclude "delay resulting from a continuance" it grants, provided the court makes findings required by § 3161(h)(7). After excluding the proper periods of delay, including pretrial motions and continuance orders, Felix was brought to trial within the seventy-day limit.

## III. CONCLUSION

For the foregoing reasons, Petitioner Felix's request for an evidentiary hearing is denied, as the Court finds that the motion and files and records of the case show conclusively that the movant is not entitled to relief. *Lilly*, 536 F.3d at 195 (quoting *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir.1989)). Accordingly, the Government's motion to dismiss is **GRANTED** and Felix's petition is **DISMISSED**

---

[5] In addition, Felix argues for the first time in his reply brief that statements made to the DEA agents should be suppressed as a violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). In support, Felix points to the DEA-6 form attached to his reply brief, which notes that Felix requested an attorney. After this request, the DEA-6 notes that Felix was asked whether he was the "sole resident of this apartment." (Pet'r's Reply Br. Ex. A at 2.) Assuming, for the sake of argument, that Felix is correct in asserting that this statement should have been suppressed, there was ample remaining evidence introduced at trial to demonstrate Felix occupied the apartment. As such, it does not appear reasonably probable that suppression of this statement would have resulted in a different trial outcome for Felix.

**WITH PREJUDICE**.  An Order follows.

    /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**